UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

GARY SMILEY                                                                    PLAINTIFF

V.                                                CIVIL ACTION NO.: 3:09CV711-DPJ-FKB

GEORGIA PACIFIC WOOD PRODUCTS, LLC                              DEFENDANT

ORDER

This employment-discrimination lawsuit is before the Court on Defendant Georgia

Pacific Wood Products, LLC's Motion  for Summary Judgment [22].  Plaintiff Gary Smiley has

responded in opposition.  The Court, having considered the memoranda and submissions of the

parties, finds that Georgia Pacific's Motion should be granted.

I.        Facts and Procedural History

Plaintiff Gary Smiley worked for Georgia Pacific from July 2005 to August 2008,

serving most recently as the safety supervisor at Georgia Pacific's Gloster, Mississippi facility.

His duties included reporting safety incidents—such as fire, property damage, and personal

injury— and maintaining records required by the Occupational Safety and Health Administration

("OSHA").  In July 2008, Georgia Pacific audited the Gloster plant's safety records.  The audit

revealed that Smiley repeatedly failed to record workplace injuries on the OSHA 300 log,

neglected to notify Georgia Pacific's third-party administrator of workers' compensation claims,

and paid for injured employees' medical treatments with a company credit card.  Smiley

admitted all of this, but maintained that he was merely following the directions of the former

plant manager and the division safety manager.  Georgia Pacific nevertheless concluded that

Smiley had been derelict in his duties and terminated his employment.

Smiley believes that his termination was motivated by two incidents in the summer of 2008.  First, around May 2008, Smiley reported a coworker's complaints of sexual harassment to Connie Johnson, human resources director.  Smiley avers that Johnson minimized the harassment, telling him the coworker was "making a mountain out of a mole hill."  Notice of Removal [1] Ex. A, Pl.'s Compl. ¶ 21.  Second, in July 2008, Smiley stopped a contractor from entering the Gloster plant because it had failed to remit required credentials, including OSHA training documentation and proof of insurance.  The plant manager overruled Smiley's decision.

After exhausting administrative remedies, Smiley filed this suit in state court, alleging retaliation in violation of Title VII and wrongful termination based on "his refusal to commit the illegal act of violating OSHA safety standards."  *Id.* ¶ 32.  Georgia Pacific removed the case to this Court based on federal question jurisdiction.  28 U.S.C. § 1331 (2006).  Georgia Pacific's Motion for Summary Judgment is fully briefed, personal and subject matter jurisdiction exist, and the Court is prepared to rule.

II.     Summary Judgment Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

In the present case, it is important to note that conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075 (5th Cir. 1994) (en banc). The 2010 amendments to Rule 56 now make this abundantly clear. Under Rule 56(c)(1), a party asserting that a fact "is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Moreover, Rule 56(c)(3) now states: "Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record." *Accord Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) ("We have explained that 'Rule 56 does not impose upon the district

3

court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'") (citations and quotations omitted).

III.     Analysis

A.     Title VII Retaliation

Smiley contends that Georgia Pacific terminated his employment for reporting a coworker's complaints of sexual harassment.  Notice of Removal [1] Ex. A, Pl.'s Compl. ¶ 27. To establish a prima facie case of retaliation, Smiley must show that (1) he participated in a Title VII protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action.  *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).  Next, the burden shifts to Georgia Pacific to present a legitimate, nonretaliatory reason for the adverse employment action.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).  Smiley must then demonstrate either: "(1) that the defendant's reason is not true, but is instead a pretext for [retaliation] (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected [activity] (mixed-motive[s] alternative)."  *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *see also Smith v. Xerox Corp.*, 602 F.3d 320, 326 (5th Cir. 2010).

Turning first to the prima facie case, it is undisputed that Smiley engaged in protected activity and was discharged.  The parties dispute the causation prong.

Smiley argues that the temporal proximity between protected activity and his termination demonstrates causation.  "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case

of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997); *see also*

*Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007) (concluding that two

and one-half months is a short enough time period to support an inference of a causal link).

Smiley complained to Johnson in May 2008, and Georgia Pacific placed him on pre-termination

leave in July 2008.  The close timing of Smiley's complaint and the adverse employment action

suggests a causal link at the prima facie stage.

      Georgia Pacific insists, however, that Smiley cannot establish causation because the

decisionmakers were unaware of his protected activity.  In order to establish the causation prong,

"the evidence [must] demonstrate[ ] that 'the employer's decision to terminate was based in part

on knowledge of the employee's protected activity.'" *Medina v. Ramsey Steel Co.*, 238 F.3d

674, 684 (5th Cir. 2001) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir.

1998)).  Thus, as a threshold issue, "the employee should demonstrate that the employer knew

about the employee's protected activity." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874,

883 (5th Cir. 2003) (citations omitted).

      To support its position, Georgia Pacific submitted the affidavits of James Branch, group

manager, and Sam Spencer, regional human resources manager.  The evidence establishes that

Branch asked Spencer, Connie Johnson and Christopher Bulls to audit the Gloster safety records

on July 12, 2008.  Def.'s Mem. [23] Ex. C, Branch Aff. ¶ 8; *id.*, Ex. D., Spencer Aff. ¶ 5.

Following the audit, Spencer recommended terminating Smiley, and Branch agreed.  *Id.*, Ex. C,

Branch Aff. ¶ 10; *id.*, Ex. D., Spencer Aff. ¶ 20; *see also id.*, Ex. F, Spencer Dep. 8.  When they

made their decision, neither Branch nor Spencer knew about Smiley's participation in a sexual-

harassment complaint.  *Id.*, Ex. C., Branch Aff. ¶ 11; *id.*, Ex. D, Spencer Aff. ¶ 21.

But while Smiley's protected activity may have been unknown to Branch and Spencer, Connie Johnson was cognizant. Smiley testified that he discussed the complaint with Johnson, and she was dismissive of his concerns. Pl.'s Resp. [26] Ex. A, Smiley Dep. 95, 105, 110; *see* Notice of Removal [1] Ex. A, Pl.'s Compl. ¶ 21.[1] Johnson assisted with the safety audit and worked alongside Spencer and Tad McMichael in the subsequent investigation into the issues uncovered during the audit. Def.'s Mem. [23] Ex. F., Spencer Dep. at 9. It appears that Johnson also participated in a meeting, along with Spencer, during which Georgia Pacific informed Smiley of the audit findings and his suspension.

"[T]he fact that [the decisionmaker] himself did not know of [the plaintiff's] protected activity does not mean than that his decision could not have been 'tainted' by [another's] knowledge of [the plaintiff's] protected activity." *Thomas v. Green*, 393 F. App'x 182, 189 (5th Cir. 2010). Moreover, the standard for establishing a causal link at the prima facie stage is relatively low. *Id.* Smiley meets that standard based on (1) Johnson's participation in the audit and subsequent investigation and (2) the close timing between Smiley's protected activity and the adverse employment action.

Moving past the prima facie case, Georgia Pacific has met its burden of producing a legitimate non-discriminatory reason for discharging Smiley. Specifically, Smiley failed to report injuries in the OSHA 300 log, neglected to open claims with Georgia Pacific's workers' compensation carrier for injured employees, and used the company credit card to pay injured

---

[1] Smiley admits that he never discussed the allegation with Branch, but he surmises, "I would have thought he knew after I talked with Connie and after I made a call to the hotline. If he did not know, then the chain of command really failed." Pl.'s Resp. [26] Ex. A, Smiley Dep. 145. Such conjecture fails to create a question of fact. *TIG Ins.*, 276 F.3d at 759.

employees' medical bills.  Georgia Pacific concluded that Smiley's conduct was intentional because he followed correct procedures in some but not all instances.  Branch adopted Spencer's recommendation to discharge Smiley.

Because Georgia Pacific presented a legitimate non-retaliatory basis for its decision, Smiley "bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose.  To carry this burden, [Smiley] must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer."  *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (citations omitted).[2]

Smiley admits that he failed to report injuries and used the company credit card.  But he claims that former Plant Manager Martin Shorey told him to use the credit card and that Division Safety Manager Christopher Bulls told him not to record injuries.  Spencer investigated these claims following the audit.  Def.'s Mem. [23] Ex. D, Spencer Aff. 3.  Because Shorey was no longer employed by Georgia Pacific, Spencer interviewed Shorey's replacement, Chuck Sansing, who had no knowledge about the credit card use.  *Id.*  Likewise, Spencer interviewed Bulls, who denied instructing Smiley to refrain from logging injuries or reporting claims.  *Id.*  In other words, Spencer investigated Smiley's claims that his conduct was authorized, but nonetheless concluded that Smiley had failed to follow company procedures.

---

[2]  In his Complaint, Smiley avers that his protected activity was a "motivating factor" in his termination.  Notice of Removal [1] Ex. A, Pl.'s Compl. ¶ 27.  But he takes the pretext alternative route in his filings in Response to the Motion for Summary Judgment.  *See* Pl.'s Mem. [27] at 5.

First, Smiley failed to present record evidence substantiating the assertion that management authorized his conduct.[3]  *See Warren v. Tex. Disposal Sys., Inc.*, No. 10-50671, 2011 WL 666917, at *1 (5th Cir. Feb. 24, 2011) ("[The plaintiff's] unsupported belief that he had permission for his acts is not sufficient to create a fact issue precluding summary judgment.") (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004)).  Second, even if he had, Spencer investigated Smiley's excuses and made a business decision that discharge was appropriate.[4]  As the Fifth Circuit has cautioned numerous times, "our job as a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions."  *Brooks v. Lubbock Cnty. Hosp. Dist.*, 373 F. App'x 434, 437 (5th Cir. 2010); *see LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) ("Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones.").

In sum, giving Smiley the benefit of the doubt that he states a prima facie case, he has not shown that Georgia Pacific's reasons for termination are pretext for retaliation.  As such, summary judgment as to his retaliation claim is appropriate.

B.      Wrongful Termination

Smiley also avers that Georgia Pacific terminated him because he refused to commit an illegal act.  Specifically, he submits that his refusal to allow a contractor to enter the plant, which

---

[3]  In fact, the only evidence Smiley cites in the pretext portion of his Response is Spencer's Affidavit.  Pl.'s Mem. [27] at 5.

[4] Even if Smiley had permission to violate policy, Georgia Pacific would not be precluded from terminating the employment of those involved in the breach.

he believes would have violated OSHA standards, prompted his dismissal.[5]  Smiley premises his

wrongful-termination claim on the public-policy exception to the employment-at-will doctrine.

Mississippi has long recognized the employment-at-will doctrine.  *See Kelly v. Miss.*

*Valley Gas Co.*, 397 So. 2d 874, 874 (Miss. 1981).  "[A]bsent an employment contract expressly

providing to the contrary, an employee may be discharged at the employer's will for good

reason, bad reason, or no reason at all, excepting only reasons independently declared legally

impermissible."  *Shaw v. Burchfield*, 481 So. 2d 247, 253–54 (Miss. 1985).  But Mississippi

adopted a public-policy exception to this doctrine in *McArn v. Allied Bruce-Terminix Co.*, 625

So. 2d 603 (Miss. 1993).  In *McArn*, the court held that the employment-at-will doctrine does not

apply when "an employee is [discharged] because he or she has refused to participate in an

illegal activity or has reported the illegal activity of his employer to the employer or to anyone

else."

*Id.* at 851.

*McArn* is inapplicable because Smiley has presented no competent evidence that he

complained of, or refused to participate in, criminal conduct.  *See Hammons v. Fleetwood Homes*

*of Miss., Inc.*, 907 So. 2d 357, 360 (Miss. Ct. App. 2004) (noting that for the exception to apply,

"the acts complained of [must] warrant the imposition of criminal penalties, as opposed to mere

civil penalties"); *see also Kyle v. Circus Circus Miss., Inc.*, No. 10–60571, 2011 WL 1659514, at

---

[5]  In Count Two ("Wrongful Termination") of his Complaint, Smiley alleges he "was
wrongfully terminated for his refusal to commit the illegal act of violating OSHA safety
standards, among other related illegal acts."  Notice of Removal [1] Ex. A, Pl.'s Compl. ¶ 32.
Georgia Pacific argues that Smiley morphed an OSHA retaliation claim into a wrongful-
termination claim in his Response to the Motion for Summary Judgment, but this argument is not
well taken.  Smiley clarified his wrongful-termination claim, acknowledging that OSHA does
not have a private right of action.  Pl.'s Mem. [27] at 6.

*4 (5th Cir. Apr. 28, 2011) (following *Hammons* and limiting *McArn* to acts that relate to criminal, not civil, penalties); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 404 (5th Cir. 2005) (same); *Bruno v. RIH Acquisitions MS I, LLC*, No. 2:06CV163, 2008 WL 152124, at *4 (N.D. Miss. Jan. 14, 2008) (same).

Significantly, the Fifth Circuit has held that OSHA civil violations do not typically trigger the *McArn* public-policy exception.  *Howell v. Operations Mgmt Intern., Inc.*, 77 F. App'x 248, 251–52 (5th Cir. 2003) (finding no "Mississippi cases indicating that the *McArn* exception applies to regulatory violations of the sort involved in [an] OSHA complaint"); *see also Downs v. Weyerhaeuser Co.*, No. 3:06cv632 DPJ-JCS, 2008 WL 607163, at *9 (S.D. Miss. Feb. 29, 2008) (dismissing wrongful-termination claim).

Here, Smiley presents no evidence that the incident involving the contractor was a criminal or illegal act.  Instead, he cites two inapposite code sections and then relies on *United States v. Pitt-Des Moines, Inc.*, which notes that willful OSHA violations resulting in death raise criminal liability.  *See* Pl.'s Mem. [27] at 6 (citing 168 F.3d 976 (7th Cir. 1999)).  But there is no evidence of a causally related fatality.[6]  Smiley's wrongful termination claim is due to be dismissed.

III.    Conclusion

Based on the foregoing, the Court finds that Georgia Pacific's Motion for Summary Judgment should be granted.  Plaintiff's claims are dismissed with prejudice.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

---

[6]Other OSHA provisions carry criminal penalties, but they have not been raised and are not applicable.  *See, e.g.*, 29 U.S.C. § 666(f) (2006).

**SO ORDERED AND ADJUDGED** this the 23rd day of May, 2011.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE